**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

**ARIELE CLARK, Individually and on behalf of all others similarly situated,**

**Plaintiff,**

**v.**

**PALMETTO STATE ARMORY, LLC,**

**Defendant.**

**Case No.** 3:26-cv-3502-MGL

**JURY TRIAL DEMANDED**

**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23**

**<u>COLLECTIVE/CLASS ACTION COMPLAINT</u>**

Plaintiff—Ariele Clark ("Plaintiff" or "Clark")—brings this action individually and on behalf of all current and former hourly call-center employees (collectively, "Plaintiff and the Putative Collective/Class Members"), who worked for Defendant—Palmetto State Armory, LLC ("Palmetto State Armory" or "Defendant")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, unpaid wages, liquidated damages, treble damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and the South Carolina Payment of Wages Act ("SCPWA" or "South Carolina Act"), S.C. Code Ann. §§ 41-10-10, *et seq*.

## I.
## OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, and a class action pursuant to the state laws of South Carolina under FED. R. CIV. P. 23, to recover unpaid non-overtime wages and other applicable penalties.

2. Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Palmetto State Armory at any time during the relevant time period(s) through the final disposition of this matter, who have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3. Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5. During the relevant time period(s), Palmetto State Armory knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6. Specifically, Palmetto State Armory's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to require Plaintiff and the Putative Collective/Class Members to perform integral and indispensable work—preparing their essential computer systems and programs—off-the-clock prior to starting their scheduled shift and after returning from their unpaid meal break (the "Start-Up Work").

7. Palmetto State Armory also required (and continues to require) Plaintiff and the Putative Collective/Class Members to attend a mandatory pre-shift meeting before they were permitted to clock in for their shift (the "Pre-Shift Meeting").

8. Palmetto State Armory also required (and continues to require) Plaintiff and the Putative Collective/Class Members to complete mandatory training modules, assessments, and weekly Zoom training sessions off-the-clock during the workweek (the "Off-the-Clock Training").

9. Finally, Palmetto State Armory failed (and continues to fail) to pay Plaintiff and the Putative Collective/Class Members overtime compensation at one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in a workweek—including hours that Plaintiff and the Putative Collective/Class Members recorded on the timekeeping system in excess of forty (40) hours. Palmetto State Armory instead applied a policy and practice of shaving off payable overtime hours, in direct violation of the FLSA.

10. The effect of Palmetto State Armory's practices was (and is) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Palmetto State Armory failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and failed to properly compensate them the proper amount of overtime under the FLSA.

11. Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

12. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages in non-overtime weeks, treble damages, and other damages owed under the SCPWA as a class action pursuant to FED. R. CIV. P. 23.

13. Plaintiff prays that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

14. Plaintiff also prays that the Rule 23 class is certified as defined herein, with Plaintiff Clark designated as the Class Representative of the South Carolina Class.

## II. THE PARTIES

15. Plaintiff—Ariele Clark—was employed by Palmetto State Armory in Columbia, South Carolina during the relevant time period. Plaintiff Clark did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

16. The FLSA Collective Members are those current and former hourly call-center employees who were employed by Palmetto State Armory, anywhere in the United States, at any time from three (3) years before the filing of this Complaint through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Clark worked and was paid.

17. The South Carolina Class Members are those current and former hourly call-center employees who were employed by Palmetto State Armory, in the State of South Carolina, at any time from three (3) years before the filing of this Complaint through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Clark worked and was paid.

18. Defendant Palmetto State Armory, LLC is a domestic for-profit limited liability company with its principal place of business and corporate headquarters located in Columbia,

[1] The written consent of Ariele Clark is attached hereto as Exhibit "A."

South Carolina, and may be served through its registered agent for service of process: **InCorp Services, Inc., 317 Ruth Vista Road, Lexington, South Carolina 29073**.

## III.
## JURISDICTION & VENUE

19. This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

20. This Court has supplemental jurisdiction over the additional South Carolina state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's FLSA claims that they form part of the same case or controversy.

21. This Court has general personal jurisdiction over Palmetto State Armory because South Carolina qualifies as its home state, as its principal place of business and corporate headquarters are in Columbia, South Carolina, which is located within this District.

22. Venue is proper pursuant to 28 U.S.C. § 1391 in the District of South Carolina, Columbia Division, because Palmetto State Armory maintains its principal place of business and corporate headquarters in Columbia, South Carolina, which is located in this District and Division.

## IV.
## BACKGROUND FACTS

23. Defendant Palmetto State Armory is one of the largest firearms and outdoor-sports retailers in the United States, operating brick-and-mortar retail stores, e-commerce platforms, and customer service call centers serving customers across the United States, with its corporate headquarters and a primary call-center operation located in Columbia, South Carolina.[2]

[2] https://palmettostatearmory.com.

***Plaintiff and the Putative Collective/Class Members are Similarly Situated***

24. To provide its services, Palmetto State Armory employed (and continues to employ) numerous hourly call-center employees, both in its call centers, and remotely from home, including Plaintiff and the individuals that make up the putative collective and class.

25. Plaintiff and the Putative Collective/Class Members were employed by Palmetto State Armory as hourly call-center employees who were not paid for all hours worked, including hours worked in excess of forty (40) hours each workweek.

26. Plaintiff and the Putative Collective/Class Members' job duties include answering inbound customer telephone calls, online chats, and emails; assisting customers with inquiries regarding orders and the status of shipments; processing cancellations, returns, and refunds; processing claims for product damage; and otherwise providing customer service for Palmetto State Armory's firearms, ammunition, and other retail products and services from Palmetto State Armory's call centers and remote work-from-home stations.

27. While exact job titles may differ, these hourly, non-exempt employees were subjected to the same or similar illegal pay practices for similar work.

28. Importantly, none of the FLSA exemptions relieving a covered employer (such as Palmetto State Armory) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective/Class Members.

29. Plaintiff Clark was employed by Palmetto State Armory as a Customer Service Representative based in Columbia, South Carolina from approximately November 2022 until November 2023.

30. Plaintiff Clark worked primarily from home and periodically reported to Palmetto State Armory's Columbia, South Carolina call-center location.

31. Plaintiff Clark was paid approximately $17.50 per hour.

32. During their respective dates of employment with Palmetto State Armory, Plaintiff and the Putative Collective/Class Members typically worked five (5) days a week, Monday through Friday and on occasion weekends, and approximately eight (8) hours per day "on-the-clock."

33. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Palmetto State Armory resulting in the complained-of FLSA and SCPWA violations.

34. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties—that is, they all answered inbound customer calls, chats, and emails; processed orders, cancellations, returns, refunds, and damage claims; and provided customer service for Palmetto State Armory's products and services.

35. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure in that they are all paid on an hourly basis and Palmetto State Armory requires them to (i) perform "Start-Up Work"—turning on their computers, logging into the company web portal, and opening and stabilizing the multiple call-handling, customer-information, and chat programs they need to handle customer interactions—before they can clock in on Palmetto State Armory's web-based timekeeping system; (ii) attend a mandatory companywide "Pre-Shift Meeting" before they are permitted to clock in; and (iii) complete mandatory "Off-the-Clock Training" outside of their scheduled and recorded shifts.

36. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to Palmetto State Armory's policies (and practices) resulting in the complained-of FLSA and SCPWA violations.

***Unpaid Start-Up Work***

37. Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Palmetto State Armory as a result of Palmetto State Armory's corporate policy and practice of requiring all hourly call-center employees to be ready to handle their first customer interaction within minutes of clocking in.

38. Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to perform integral and indispensable tasks before clocking in.

39. The Start-Up Work was necessary to prepare for their shifts and to allow them to begin taking customer interactions after clocking in.

40. The Start-Up Work includes turning on the computer and waiting for it to boot up, logging into the computer, opening and logging into the Palmetto State Armory web portal used to record time, opening and logging into Microsoft Teams and Zoom, opening and logging into the DC IMS system, opening and logging into the customer-communications application, and otherwise opening and stabilizing the programs and databases necessary to perform their jobs.

41. Palmetto State Armory does not maintain a stand-alone time-clock; instead, Plaintiff and the Putative Collective/Class Members are required to clock in by clicking a button on a Palmetto State Armory web portal that records the punch and returns a confirmation message that the punch has been accepted.

42. Plaintiff and the Putative Collective/Class Members cannot access that web-based clock-in function until the underlying computer, network connection, and required programs have been launched and stabilized.

43. On a typical day, Plaintiff and the Putative Collective/Class Members' Start-Up Work took approximately fifteen (15) to thirty (30) minutes to complete each morning before they could clock in.

44. In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Start-Up Work qualified as unpaid straight-time wages owed under the SCPWA.

45. In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime under the FLSA.

46. Palmetto State Armory required (and continues to require) Plaintiff and the Putative Collective/Class Members to be ready to take customer interactions within minutes of clocking in both at the start of their shifts and after returning from their unpaid meal breaks.

47. Specifically, Plaintiff and the Putative Collective/Class Members were instructed to arrive at their workstations well before their scheduled shift start time to turn on their computer, log into the Palmetto State Armory web portal, log into Microsoft Teams and Zoom, log into the DC IMS system, and open the customer-communications applications they needed to handle customer interactions right at their shift start.

48. Some of Plaintiff and the Putative Collective/Class Members' Start-Up Work had to be performed before Plaintiff and the Putative Collective/Class Members could even access the web-based clock-in program.

49. Specifically, turning on the computer, logging into the computer, and logging into the Palmetto State Armory web portal had to be performed before Plaintiff and the Putative Collective/Class Members could click the "clock-in" button.

50. Even though Palmetto State Armory knew that Plaintiff and the Putative Collective/Class Members had to perform this work prior to even being able to access the clock-in function, Palmetto State Armory does not credit them time for this work.

51. Palmetto State Armory considers time spent turning on the computer, logging into the desktop, and logging into its web portal and other similar programs to be non-compensable work.

52. After turning on the computer, logging in, and logging into the web portal and security programs, Plaintiff and the Putative Collective/Class Members could then access the call-handling and customer-information programs and databases.

53. Plaintiff and the Putative Collective/Class Members were required by Palmetto State Armory to open and stabilize all of their programs and databases prior to going active on the customer-service queue.

54. Should a Plaintiff or Putative Collective/Class Member go active on the customer-service queue before the programs were open and stabilized, the Plaintiff or Putative Collective/Class Member would not be able to access information and material critical to help the customer—such as customer order data, payment information, shipment status, product data, and account records.

55. Because the programs and databases could take several minutes—and frequently substantially longer—to open and stabilize, Plaintiff and the Putative Collective/Class Members could not clock in until the programs were open and stabilized, otherwise they could receive discipline for being active on the customer-service queue without being able to assist the customer.

56. Therefore, the only way to be ready and have completed the Start-Up Work on time, and to avoid discipline, is to complete the Start-Up Work off-the-clock and without pay.

57. Palmetto State Armory knew the Start-Up Work took a substantial amount of time and encouraged performing the Start-Up Work off-the-clock.

58. Although the Start-Up Work is necessary and integral to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

59. Palmetto State Armory required (and continues to require) Plaintiff and the Putative Collective/Class Members to perform the Start-Up Work "off-the-clock" before they clock in.

60. In addition to the pre-shift Start-Up Work, Plaintiff Clark and the Putative Collective/Class Members are required to clock out for an unpaid thirty (30) minute meal break each day. Palmetto State Armory stresses to Plaintiff Clark and the Putative Collective/Class Members during orientation and thereafter that returning late from the meal break results in discipline—including formal write-ups. Because the computer programs and databases reboot during the unpaid meal break, Plaintiff Clark and the Putative Collective/Class Members regularly returned to their workstations approximately ten (10) minutes before the end of the meal break to re-load their programs so that they would be ready to clock back in and take customer interactions on time. That post-meal-break Start-Up Work was performed off-the-clock and without pay.

***Unpaid Pre-Shift Meetings***

61. In addition to the unpaid Start-Up Work, Palmetto State Armory required (and continues to require) Plaintiff and the Putative Collective/Class Members to attend a mandatory pre-shift companywide meeting (the "Pre-Shift Meeting") each workday before they were permitted to clock in.

62. The Pre-Shift Meeting was conducted by Palmetto State Armory through Microsoft Teams and was led, at various times, by call-center management, including a principal manager at the Columbia, South Carolina call center.

63. The Pre-Shift Meeting was attended by all Customer Service Representatives—Plaintiff and the Putative Collective/Class Members—and covered topics such as company announcements, loss-prevention reminders, customer-service goals, recognitions, and other general business items.

64. Following the Pre-Shift Meeting, Plaintiff and the Putative Collective/Class Members were then placed into smaller "team" breakout meetings led by their respective team leads to review daily goals and assignments.

65. Plaintiff and the Putative Collective/Class Members were not permitted by Palmetto State Armory to clock in until ***after*** the Pre-Shift Meeting had concluded.

66. For example, although Plaintiff Clark's shift was scheduled to begin at 8:00 a.m., she—and other Customer Service Representatives—were not permitted to click the clock-in button on Palmetto State Armory's web portal until after the Pre-Shift Meeting concluded, typically between approximately 8:17 a.m. and 8:30 a.m. each morning.

67. The Pre-Shift Meeting was mandatory, required by Palmetto State Armory, controlled by Palmetto State Armory through its team-management structure, and conducted using Palmetto State Armory's communications systems.

68. Plaintiff and the Putative Collective/Class Members were not permitted to skip or shorten the Pre-Shift Meeting.

69. The Pre-Shift Meeting constituted compensable work time under the FLSA and the SCPWA, but Palmetto State Armory did not (and does not) compensate Plaintiff and the Putative Collective/Class Members for the time they spent attending it.

70. In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Pre-Shift Meeting time qualified as unpaid straight-time wages owed under the SCPWA.

71. In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Pre-Shift Meeting time qualified as unpaid overtime under the FLSA.

***Off-the-Clock Training***

72. Palmetto State Armory also required (and continues to require) Plaintiff and the Putative Collective/Class Members to complete mandatory training modules and assessments outside of their scheduled and recorded shifts.

73. The mandatory training modules and assessments covered topics such as company history and product knowledge and typically took approximately forty-five (45) minutes to one (1) hour each to complete.

74. Plaintiff Clark was required to complete such training modules and assessments approximately two (2) to three (3) times per week throughout her employment with Palmetto State Armory.

75. In addition, Palmetto State Armory required Plaintiff and the Putative Collective/Class Members to attend a mandatory Zoom training session each Friday concerning software, systems, and procedures.

76. The Friday Zoom trainings typically lasted approximately forty-five (45) minutes to one (1) hour.

77. Palmetto State Armory required the mandatory training modules, assessments, and Zoom training sessions to be completed by all call-center employees, monitored completion of

those trainings, and disciplined or otherwise sanctioned call-center employees who failed to complete them.

78. The mandatory training modules, assessments, and Zoom training sessions were necessary, integral, and indispensable to Plaintiff and the Putative Collective/Class Members' work as Customer Service Representatives.

79. The Off-the-Clock Training constituted compensable work time under the FLSA and the SCPWA, but Palmetto State Armory did not (and does not) compensate Plaintiff and the Putative Collective/Class Members for the time they spent completing it.

80. In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Off-the-Clock Training qualified as unpaid straight-time wages owed under the SCPWA.

81. In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Off-the-Clock Training qualified as unpaid overtime under the FLSA.

***Unpaid Overtime***

82. In addition to the unpaid Start-Up Work, unpaid Pre-Shift Meeting, and Off-the-Clock Training, Palmetto State Armory failed (and continues to fail) to pay Plaintiff and the Putative Collective/Class Members overtime compensation at one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in a workweek—including hours that Plaintiff and the Putative Collective/Class Members recorded on Palmetto State Armory's timekeeping system in excess of forty (40) hours.

83. During the relevant time period, Plaintiff Clark and the Putative Collective/Class Members regularly worked in excess of forty (40) hours per workweek.

84. In Plaintiff Clark's case, she often worked and recorded up to approximately fifty (50) hours in a workweek when working on the customer-service queue, including during the time period from August 2023 through the end of her employment.

85. Notwithstanding that Plaintiff Clark and the Putative Collective/Class Members recorded hours in excess of forty (40) on Palmetto State Armory's timekeeping system, Palmetto State Armory did not pay them overtime compensation at one and one-half times their regular rates of pay for those hours.

86. On information and belief, Palmetto State Armory's practice was to reduce, disregard, or decline to pay recorded overtime hours, in whole or in part, such that Plaintiff and the Putative Collective/Class Members were not paid one and one-half times their regular rates for all overtime hours worked.

87. Plaintiff Clark inquired with management on multiple occasions about missing overtime pay reflected on her pay statements.

88. Each time, Palmetto State Armory told Plaintiff Clark they would "look into it," but no corrective action was taken and Plaintiff Clark was not paid for those overtime hours.

89. In weeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, Palmetto State Armory's refusal to pay overtime and its unlawful time-shaving policy resulted in unpaid overtime in violation of the FLSA.

90. Palmetto State Armory knew or should have known that it was not (and is not) compensating Plaintiff and the Putative Collective/Class Members for the proper amount of overtime compensation in violation of the FLSA.

91. Palmetto State Armory's actions therefore constitute willful violations under the law and were not made in good faith.

92. Palmetto State Armory knew or should have known that its failure to pay overtime to Plaintiff and the Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

93. Because Palmetto State Armory did not pay Plaintiff and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Palmetto State Armory's pay policies and practices willfully violated (and continue to violate) the FLSA.

94. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

95. The preceding paragraphs are incorporated as though fully set forth herein.

96. The "FLSA Collective" is defined as:

**ALL CURRENT AND FORMER HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY PALMETTO STATE ARMORY, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM THREE (3) YEARS BEFORE THE FILING OF THIS COMPLAINT THROUGH THE FINAL DISPOSITION OF THIS MATTER (the "FLSA Collective Members").**

97. At all material times, Palmetto State Armory has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

98. At all material times, Palmetto State Armory has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

99. At all material times, Palmetto State Armory has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of a multistate firearms, ammunition, and outdoor-sports retailer and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

100. Specifically, Palmetto State Armory employs Call-Center Employees to provide customer service for the firearms, ammunition, and other retail products and services Palmetto State Armory sells to customers across the United States; purchases materials through commerce; transports materials through commerce and on the interstate highways; and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

101. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Palmetto State Armory, these individuals provided services for Palmetto State Armory that involved interstate commerce for purposes of the FLSA.

102. In performing work for Palmetto State Armory, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

103. Specifically, Plaintiff and the FLSA Collective Members are (or were) employees who provided customer service for Palmetto State Armory's retail products and services sold to consumers throughout the United States. 29 U.S.C. § 203(j).

104. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

105. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in paragraph 96.

106. The precise size and identity of the proposed collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Palmetto State Armory.

**B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

107. Palmetto State Armory violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of a multistate firearms and outdoor-sports retailer, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

108. Moreover, Palmetto State Armory knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

109. Palmetto State Armory is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

110. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Palmetto State Armory to pay them according to the law.

111. The decision and practice by Palmetto State Armory to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

112. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one and one-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**C. COLLECTIVE ACTION ALLEGATIONS**

113. All previous paragraphs are incorporated as though fully set forth herein.

114. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Palmetto State Armory's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

115. Other employees have been victimized by Palmetto State Armory's pay practices and patterns that are in willful violation of the FLSA.

116. The FLSA Collective is defined in paragraph 96.

117. Palmetto State Armory's failure to pay overtime compensation for the hours that Plaintiff and the FLSA Collective Members worked over forty (40) hours each workweek resulted from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Collective Members.

118. Thus, Plaintiff's experiences are typical of those of the FLSA Collective Members.

119. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

120. All FLSA Collective Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

121. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

122. Absent a collective action, many members of the proposed FLSA Collective will not likely obtain redress of their injuries, and Palmetto State Armory will retain the proceeds of its violations.

123. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the FLSA Collective and provide for judicial consistency.

124. Accordingly, the FLSA Collective of similarly situated plaintiffs should be certified as defined in paragraph 96 and notice should be promptly sent.

**SECOND CAUSE OF ACTION**
**(Class Action Alleging Violations of the SCPWA)**

**A. SCPWA COVERAGE**

125. The preceding paragraphs are incorporated as though fully set forth herein.

126. The "South Carolina Class" is defined as:

**ALL CURRENT AND FORMER HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY PALMETTO STATE ARMORY, LLC, IN THE STATE OF SOUTH CAROLINA, AT ANY TIME FROM THREE (3) YEARS BEFORE THE FILING OF THIS COMPLAINT THROUGH THE**

**FINAL DISPOSITION OF THIS MATTER (the "South Carolina Class Members").**

127. At all material times, Palmetto State Armory has been an "employer" as defined by the SCPWA. *See* S.C. CODE ANN. § 41-10-10(1).

128. At all material times, Plaintiff Clark and the South Carolina Class Members were "employed" by Palmetto State Armory as defined within the SCPWA. *See* S.C. CODE ANN. §§ 41-10-10 to 110.

129. Plaintiff Clark and the South Carolina Class Members are "employees" within the meaning of the SCPWA and are not free from the control and direction of Palmetto State Armory.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE SCPWA**

130. All previous paragraphs are incorporated as though fully set forth herein.

131. During the course of their employment, Palmetto State Armory agreed to pay Plaintiff Clark and each South Carolina Class Member "wages" as defined in the SCPWA to compensate them for labor rendered to Palmetto State Armory. *See* S.C. CODE ANN. § 41-10-10(2).

132. Plaintiff Clark and each South Carolina Class Member accepted Palmetto State Armory's offer of employment.

133. The SCPWA requires employers, like Palmetto State Armory, to "notify each employee in writing at the time of hiring of the normal hours and wages agreed upon, the time and place of payment" and the "employer shall furnish each employee with an itemized statement showing his gross pay and the deductions made from his wages for each pay period." S.C. CODE ANN. §§ 41-10-30(A); 41-10-40(C).

134. The SCPWA also provides that employers, like Palmetto State Armory, "shall not withhold or divert any portion of the employee's wages unless the employer is required or permitted to do so by state or federal law." S.C. CODE ANN. § 41-10-40(C).

135. Further, "any changes [to] the terms [of wages] must be made in writing at least seven calendar days before they become effective." S.C. CODE ANN. § 41-10-30(A).

136. In violation of the SCPWA, Palmetto State Armory willfully failed to provide Plaintiff Clark and the other South Carolina Class Members, at the time of their hiring, proper notice in writing of the normal hours and wages agreed upon and the time and place of payment, nor did Palmetto State Armory provide them with compliant wage statements for each of their pay periods as required by law, because the notice and wage statements failed to include hours worked off the clock due to Palmetto State Armory's policies of requiring unpaid Start-Up Work, unpaid Pre-Shift Meeting attendance, and unpaid Off-the-Clock Training.

137. Palmetto State Armory also willfully failed to pay Plaintiff Clark and the South Carolina Class Members all compensation for "wages" due and owing to them within the time frame required by the SCPWA. *See* S.C. CODE ANN. §§ 41-10-10(2); 41-10-50.

138. Additionally, Palmetto State Armory failed to provide Plaintiff Clark and the South Carolina Class Members with at least seven days' advance written notice of the deductions or the amounts of the deductions that it made (or failed to credit) to their paychecks.

139. Palmetto State Armory has withheld wages of Plaintiff Clark and the South Carolina Class Members without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct.

140. In violating the SCPWA, Palmetto State Armory acted willfully, without a good-faith basis, and with reckless disregard of clearly applicable South Carolina law.

141. As a direct and proximate result of Palmetto State Armory's willful conduct, Plaintiff Clark and the South Carolina Class Members have suffered substantial losses, and continue to suffer substantial losses, and have been deprived of compensation to which they are

entitled—damages, including monetary damages in the amount of three (3) times the amount of their unpaid wages as well as costs and reasonable attorneys' fees pursuant to the SCPWA. *See* S.C. CODE ANN. § 41-10-80.

142. Palmetto State Armory is in possession and control of necessary documents and information from which Plaintiff Clark would be able to precisely calculate damages.

143. The proposed class of putative class members sought to be certified pursuant to the SCPWA is defined in paragraph 126.

144. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Palmetto State Armory.

**C. SCPWA CLASS ALLEGATIONS**

145. Plaintiff Clark brings the SCPWA claim individually and on behalf of the South Carolina Class Members pursuant to FED. R. CIV. P. 23.

146. Class action treatment of Plaintiff Clark's and the South Carolina Class Members' claims is appropriate because, as alleged herein, all of Rule 23's class action requisites are satisfied.

147. **Numerosity**: The South Carolina Class is so numerous that joinder of all members is impracticable. On information and belief, there are hundreds of current and former hourly call-center employees who were employed by Palmetto State Armory in South Carolina during the relevant time period and were subjected to the same illegal pay practices. Indeed, on information and belief, Palmetto State Armory employed approximately five hundred (500) call-center employees at its Columbia, South Carolina call center alone during the relevant time period.

148. **Commonality**: There are questions of law and fact common to the South Carolina Class, including but not limited to: whether Palmetto State Armory failed to pay Plaintiff Clark

and the South Carolina Class Members all wages owed for the pre-shift Start-Up Work, the mandatory Pre-Shift Meeting, post-meal-break Start-Up Work, and the Off-the-Clock Training.

149. **Typicality**: Plaintiff Clark's claims are typical of the claims of the South Carolina Class Members. Plaintiff Clark and the South Carolina Class Members worked the same or similar customer-service job duties, were subjected to the same Start-Up Work, Pre-Shift Meeting, Off-the-Clock Training, and were denied wages for that work under the same pay practices.

150. **Adequacy**: Plaintiff Clark will fairly and adequately protect the interests of the South Carolina Class. Plaintiff Clark's interests are coextensive with, and not antagonistic to, those of the absent South Carolina Class Members. Plaintiff Clark is represented by counsel experienced in litigating wage-and-hour collective and class actions.

151. **Predominance and Superiority**: Common questions of law and fact predominate over any individual questions affecting only individual South Carolina Class Members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other things, the South Carolina Class Members lack the financial resources or incentive to prosecute individual actions, and a class action will conserve judicial resources and ensure consistent adjudication.

152. Accordingly, the South Carolina Class should be certified as defined in paragraph 126.

## VI.
## RELIEF SOUGHT

153. Plaintiff Ariele Clark respectfully prays for judgment against Palmetto State Armory as follows:

a. For an Order certifying the FLSA Collective as defined in paragraph 96;

b. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order pursuant to § 16(b) of the FLSA finding Palmetto State Armory liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d. For an Order certifying the South Carolina Class as defined in paragraph 126, and designating Plaintiff Ariele Clark as Representative of the South Carolina Class;

e. For an Order pursuant to the SCPWA awarding Plaintiff Ariele Clark and the South Carolina Class Members damages for unpaid wages, treble damages in an amount equal to three (3) times the amount of unpaid wages, and reasonable attorneys' fees and costs pursuant to S.C. CODE ANN. § 41-10-80, and all other damages allowed by law;

f. For an Order awarding the costs of this action;

g. For an Order awarding attorneys' fees;

h. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

i. For an Order awarding Plaintiff Ariele Clark a service award as permitted by law;

j. For an Order compelling the accounting of the books and records of Palmetto State Armory, at Palmetto State Armory's expense (should discovery prove inadequate); and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

FALLS LEGAL, LLC

By: /s/ *J. Scott Falls*
J. Scott Falls
Federal I.D. No. 10300
scott@falls-legal.com
Ashley L. Falls
Federal I.D. No. 12083
ashley@falls-legal.com
125-E Wappoo Creek Dr., Suite 102
Charleston, South Carolina 29412
Telephone: (843) 737-6040
Facsimile: (843) 737-6140

ANDERSON ALEXANDER, PLLC

Clif Alexander*
Texas Bar No. 24064805
clif@a2xlaw.com
Austin W. Anderson*
Texas Bar No. 24045189
austin@a2xlaw.com
Lauren E. Braddy*
Texas Bar No. 24071993
lauren@a2xlaw.com
Carter T. Hastings*
Texas Bar No. 24101879
carter@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**Pro Hac Vice* admission to be sought

***Counsel for Plaintiff and Putative Collective/Class Members***

Charleston, South Carolina
August 14, 2026

# **EXHIBIT A**

Ariele Clark Consent to Join Form

# CONSENT TO JOIN WAGE CLAIM

Print Name: Ariele Clark

1. I hereby consent to participate in a collective action lawsuit against **Palmetto State Armory and any subsidiaries and/or affiliates** to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at ANDERSON ALEXANDER, PLLC as my attorneys to prosecute my wage claims.

4. I intend to pursue my claim individually, unless and until the Court certifies this case as a collective action. I agree to serve as the Class Representative if the Court so approves. If someone else serves as the Class Representative, then I designate the Class Representative(s) as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

5. I authorize the law firm and attorneys at ANDERSON ALEXANDER, PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: [signature] Date: 2/19/26 22:36 CST